Good afternoon, Your Honor. May it please the Court. Lila Morgan, Federal Defenders of San Diego, on behalf of Rodrigo P., the Juvenile Mayo. The adjudication of delinquency in this case should be reversed for three distinct reasons. First, the government's failure to comply with any of the provisions of 18 U.S.C. 5033 violated Rodrigo P.'s due process rights. Second, the speedy trial provisions of 18 U.S.C. 5036 were violated when Rodrigo P. was held in federal detention for more than 45 days before being brought to trial. And lastly, the District Court did not have jurisdiction over Rodrigo P. because the government did not properly certify the information pursuant to 5032. I'll begin briefly with the certification issue. The certification requirements of 5032 require that the Attorney General or their designated successor, as given in the CFR and which this Court has made clear, is the United States Attorney, certifies to the District Court one of three things. The only one being relevant in this case is that the State Court does not have jurisdiction or refuses to assume jurisdiction over the juvenile. Don't all of your three points turn on a preliminary determination that where the government is faced with ambiguity regarding the age of a defendant, the default position must be to treat him as a juvenile and proceed under the Act? I think the first two positions definitely turn on that finding. The certification position does not, but you're absolutely correct that that should be the default setting, especially when government agents at time of the arrest have this ambiguity. And as a matter of the purposes of the JDA, I think that's where that analysis begins. The JDA, and this Court has stated it multiple times most recently in U.S. v. CM and U.S. v. Jose D.L., that the purpose of the Juvenile Delinquency Act is to protect juveniles. Did you find any case dealing with ambiguous circumstances? Both sides have cited cases in which the juvenile represented herself or himself to be an adult, and there was no conflicting evidence, and then they've gone on from there. Have you found any cases from any circuit, any district, in which the precise point was that there was evidence going both ways? I did not, making this an issue of first impression for this Court. And I think in this case it is something more than ambiguity. The arresting agent, and this is information that was not provided to the defense counsel or even made clear to the district court until well into trial, the arresting agent at the time of arrest had ident and enforced records that showed these arrests and treatment as a juvenile delinquent. The fact is treating Rodrigo P. at that point as a juvenile would have cleared the ambiguity, and that's evidenced by the testimony of the Mexican consular official. The minute they started processing Rodrigo P. as a juvenile under 5033A, their next step would have been to call the Mexican consulate. The Mexican consulate official testified at the age determination hearing that once learning of this individual, he ran the names of the database, and it immediately popped up that he, in fact, had been voluntarily returned to Mexico on October 28th, less than a month before his arrest in this case. Well, that showed up, didn't it? I mean, it was very confusing reading the record with regard to what showed up on the federal database. But I gather, and frankly, there seemed to me to be some lack of forthcomingness by the arresting agent the first time he testified, because the second time he testified, he told quite a different story than he told the first time. But the second time, it appeared to me that he was saying that it did pop up. Is that right? He also knew that he had been returned as a juvenile. He did know that. He did know that. Is that right? I'm not sure. Is that right? That is correct, and that's evidenced in Agent Salazar's testimony at trial. Right. Went on cross-examination. He was asked specifically about it. So he didn't have – I mean, therefore, going to the consulate wouldn't have told him anything he didn't know, but the question is what should he have done with what he did know. Well, what he should have done with what he did know was treat Rodrigo P. as a juvenile, regardless of Rodrigo's own statement. The Supreme Court has even said that juveniles, unfortunately, can't necessarily even take care of themselves. They made that clear in Bellotti v. Baird. Making a quote to be specific, the Supreme Court said, during the formative years of childhood, minors often lack the experience, perspective, and judgment to recognize and avoid choices that would be detrimental to them. What Agent Salazar testified he did after he found this information out was turn back to Rodrigo P. and say, you provided me with X birth date. Is that your real birth date? And Rodrigo P. answered him affirmatively. He did turn to him and say, but last time we asked you, you said your birth date was X. Was that your birth date? Right. He didn't say, the last time you provided a birth date, this is the birth date you provided. It would make you 17. If you're 17, other things have to happen. That makes you a juvenile, and you'll be treated differently. He didn't explain any of that. And I think beginning processing him as a juvenile under 5033, in any case of ambiguity, would clear it out, either through a contact with the consulate or the parent. Had Rodrigo P. been 18, and they began processing him as a juvenile, they called the consulate. The consulate would have said, no, this person isn't 17. What were the precise differences on the ground that would have occurred had they treated him as a juvenile at the time Salazar knew whatever he knew? The precise differences on the ground are, first, Rodrigo P. wouldn't have been interrogated in the manner that he was. Rodrigo P. was interrogated several hours after his arrest, something to the tune of like six hours. He was also arrested on November 19th and not taken before a magistrate until November 21st, a full two days later, which is clearly not forthwith under any of the case law in this circuit, and for no reason other than they thought he was an adult. I think they would have been. The only consequence would have been that they would have had to move faster, essentially. They would have had to move faster, and they may or may not have been able to use his confession. And the use of that confession convicted him at trial. And they would have not been able to use his conviction because they couldn't have interrogated him at all without having his parents there or what? That's what I'm trying to find out exactly. Oh, excuse me. I'm sorry. Under 5033, until they've spoken to the consulate or a parent of Rodrigo P. and made contact with them, explained to that adult individual Rodrigo's peace rights, and then proceeded to provide Miranda warnings in a language discernible to the juvenile, then and only then could they begin the confession process. Could you explain to me what from the confession made a difference? Assuming that we determined that there was a violation of Section 5033, why wasn't it a harmless error? I mean, they saw him driving the truck, fleeing from the truck with the aliens there. Well, I think the financial gain issue is one aspect of the confession that definitely renders it not harmless. It was only through Rodrigo P.'s confession that the government had substantial evidence of the financial motive in this case. They had some evidence from the other material witnesses, the other aliens who were smuggled, who indicated that they had paid. But was there something different about the information that came out via the confession? Rodrigo P. actually admitted not that he was being specifically paid, that in fact he was going to be smuggling in lieu of payment, which is a bit tenuous. It wasn't the whole, as I understood it, that the whole without the confession is his knowledge that they were going to pay. Right, his knowledge that they were going to pay or that anyone In other words, that anybody, you could have gotten from these other people, aside from this hearsay issue, but assuming that that's not a problem, that they intended to pay, but where would you get the evidence that he The only evidence as far as I could tell that he knew they were going to pay was that he knew he was going to pay. So it was a pretty good inference that he knew they were going to pay. Exactly. His specific intent on financial gain as required by United States v. Munoz was gained entirely from his confession. I think there also may have been different issues under this court's decision, recent decision in United States v. Lopez, about when he came into the United States and those timing issues. Some of that evidence would have been provided by the material witnesses, but most of it was provided by Rodrigo P. himself. And his confession did form the basis of the information filed against him in this case. The initial complaint, which then turned into an indictment, which then turned into juvenile information. But that confession was a substantial part of both the complaint and the information. But further, this court doesn't even have to go to the harmless error analysis in juvenile cases. Multiple times this court has discussed how in cases where the JDA is violated, the court has the discretion to reverse the conviction to just ensure that the prophylactic safeguards for juveniles not be eroded or neglected. I think this is a hard case for that, precisely for the reason Judge Singleton suggested, which is that if there was a violation here, it was not a violation of any known existing case law, because it's a somewhat unusual situation. It is a somewhat unusual situation, but I think it is one that would, is going to, can and would repeat itself. And I think it was also, I think this is a situation. If you're fine, if you write an opinion, then we've helpfully dealt with that, at least in the first instance, if we accept your view of the matter. Going to the certification issue briefly, I think the problem with the certification here is that Ms. Carol Lamb only certified that the state of California doesn't have jurisdiction. The government concedes that if the state wanted to, they could have prosecuted Rodrigo P. in state court. The only issue now is whether or not they chose not to. It's our position. Why couldn't you simply read that as saying it doesn't have jurisdiction, because it hasn't brought a case it doesn't want to, so it won't have jurisdiction? Well, I think that first the specific statute in 5032 spells out that the U.S. attorney needs to certify one of two things, that they either don't have jurisdiction or refuse to assume it. So by now reading into the state doesn't have jurisdiction as also meaning refuses to assume it, it actually renders that portion of the statute superfluous. And frankly, the government didn't necessarily take the position until well into the proceedings that California could have prosecuted him at all. So I think that now we're using a declaration and reading things into the certification that weren't there. Well, which is the case that says that it has to be signed by the U.S. attorney herself? That's actually U.S. v. Doe and U.S. Excuse me, that's correct. That's Kenneth C. It's U.S. v. Kenneth C. I was like, it's U.S. v. Doe and I'll have to give you the site, but actually United States v. Kenneth C. But there's nine-circuit clarification. Yes, that the U.S. attorney themselves has to sign it specific to the CFR. Well, there's some language about being able to delegate that authority to others. There's both a delegation provision and there's a letter, in fact, delegating or allowing for delegation. Delegation to the actual U.S. attorney. And in Kenneth C. and some of the cases, just one moment, I can give you the site. In Kenneth C. and other cases relied upon by that, the ninth circuit has said that because the statute itself actually requires for the attorney general to certify it, the attorney general through CFR 0.57 delegated that through the letter to two United States attorneys. This Court has reversed when an assistant signed. And reversed and remanded in another case where the issue was that the assistant may or may not have been the acting U.S. attorney at the time it was signed. But that's clearly not the issue here. John Weiss, the only other person to sign anything relating to the certification, was not the acting U.S. attorney and had no authority under the CFR statute. If we were to decide that the certification was improper, the whole conviction? Yes. Yes. In fact, it would be reversed. Can they do it again? I would argue no. The fact is that if the certification is improper, then the district court never had jurisdiction, does not have jurisdiction over Rodrigo P. and nothing in the filing and wouldn't maintain the jurisdiction. They could do it again because wouldn't there be a double jeopardy problem at that point? I honestly. It just seems like a very silly rule, I guess is what I'm saying. And this Court has looked at the ministerial, you know, in Cervantes, Gonzales, Cervantes, Cervantes, Gonzales, Cervantes, excuse me, the case related on the government. They discussed the issue of form over substance, and it does seem somewhat of a strange rule. But it is. We've said we don't. This is a rule in which we look at substance, not form. And one of those cases. Yes, and Gonzales, Cervantes specifically as well, that it is substance over form. But here it's a substantive error. This is an issue of law that Ms. Lamb mistakenly thinks that the state of California couldn't prosecute these, couldn't have prosecuted this case. And the provisions of 5032 and the rest of the Juvenile Delinquency Act, but 5032 specifically, rest on Congress's notion in passing the act that federal jurisdiction is not the place where a juvenile should be handled in the first instance. And that it should be somewhat of a court of last resort in that that's why there is this certification process. So I think that for those reasons, this is a substantive issue and not. Insofar as the certification is that there's no substantial federal interest, one can understand why that has to be certified by the U.S. attorney herself. Because that's a policy decision. But insofar as it's a certification as to a fact, i.e., either California doesn't have jurisdiction or California has declined jurisdiction, I mean, truthfully speaking, the U.S. attorney is not going to know either of those things. She's going to send somebody else off to find out. And having her certified to it is a sham. I mean, the other seems quite sensible because, as I say, it's a policy decision. Well, I think that the reason 5032 is enacted the way it is and written the way it is, is as this gatekeeping method. And so while she may have to send somebody else to do that, it still has to be done. And she still is the one responsible for signing that certification and basically making sure that. Is it clear that she has to sign the factual statements as opposed to the declaration that there's no federal interest? It's clear that she has to sign the certification, and 5032 lays out what has to be in that certification. That's what's clear, that she must be the one that certifies to the district court what gives them jurisdiction under 5032. And that is one of three enumerated things at issue here, is that the state doesn't have jurisdiction or refuses to assume jurisdiction. If you want to reserve some time. I was just about to do that. Thank you very much. Thank you, Your Honor. Good afternoon, Your Honors. May it please the Court. Christopher Tenorio for the United States. This is not a case of governmental misconduct. Well, I know. It's interesting you started there, because I think Mr. Salazar's behavior was extremely troubling. Well, I will agree with you on this point. You are correct that in the adjudication hearing, he did not bring up knowing about the three juveniles. More than that. I mean, he certainly created the impression, anybody who listened to it, that there was nothing else. And he stressed the fact that there were other dates, other adult dates. He didn't mention the juvenile. I mean, I think he was completely misleading, at best, and perhaps worse. Well, and I'll leave it at that. And I will point out that the AUSA that was questioning him was unaware of any of those arrests, too. If you'll see his questioning, he wasn't even aware of the second one. At the trial, he did bring out that there were other juvenile arrests. So I think we can agree that at the time of And it's a consequence because it led to the judge's suspicion about the juvenile status. And it led probably to a month-long delay in determining that he was a juvenile. And probably, at least on your theory, to a speedy trial act provision that didn't become operative for about a month when it should have been operative a month earlier if he had been forthcoming. Well, I do believe that it was inconsequential for this reason. What he had were six arrests and at least three different dates of birth that he gave. And all we had, all the agent had to clarify that was to ask the Roderigo P. again, what is your actual birth date? And that's when he gave it. Now, appellant says, no, he could have called the consulate. He could have called the family. But that actually would not have clarified anything. He could have said, last time he was here, you said X. Which one's correct? Yes. And he would have confirmed that. He would have confirmed what Agent Salazar already knew. Last time he came in, he said he was a juvenile. But Agent Salazar still would have known that the time before that, he claimed he was an adult. What I'm saying, if he was going to question him, he at least could have questioned him in a way that was likely to elicit the answer, a more forthcoming answer. If he was going to rely on his answer, he at least might have told him that he knew that there was a possibility it wasn't so. That's true. But, again, before that, his very first arrest in 2005, Rodrigo P. gave the same date of birth that he did on this arrest. So that corroborated what he had said was being true. As Mr. Salazar knew, as Magistrate Judge Lewis recognized, and as Judge Houston recognized, Rodrigo P. was aware that depending on whether he was a juvenile or adult, could manipulate how he was going to be treated. So it was a conscious decision on Rodrigo P.'s part on whether he was saying he was a juvenile or adult. What's interesting here is the reason we have special rules about juveniles is because we don't trust them to make decisions for themselves. Otherwise, we wouldn't have these rules. That's true. But the problem is, the question is rather how we, what the evidence should be on whether we go forward with there's a juvenile. Now, there's certainly going to be cases in there. Excuse me a second. When I look at Section 5033, I don't see any exceptions for when juveniles lie. It just says, whenever a juvenile is taken into custody. Why do we care whether the juvenile lied to the Border Patrol or not? Well, we don't know. It's not quite a juvenile in the sense that he's under 18. It's also an alleged delinquent. It just says whenever a juvenile is taken into custody. That's how it starts. Okay. What we have is that we don't have any cases. The only cases we have that address whether or not they knew the person was a juvenile come after the fact. But why does that matter for purposes of interpreting the statute? That's where I was confused. I mean, 5036 clearly has an exception for when a juvenile causes a delay. But I don't see any exception in Section 5033. Well, here's the, it helped me to think of it in this way. There are two parts of the JDA that really benefit the juvenile. The notification requirements of 5033 and then the speedy trial parts of 5036. If he does not receive the benefit of the notification parts of 5033, there's still the benefits of 5036. If he lied, as he did here at the onset, the notification benefits are already out the window because that time has gone on. Why is that? Because the time has already passed to allow the parental assistance at the time of arrest to. But that just goes to the remedy, I would expect, rather than whether the statute's been violated. Well, perhaps. And the question came up earlier. What would have happened had they known he was a juvenile? And the answer was they couldn't have proceeded until the parents came forward. And that's not actually quite correct. What they would have had to do was make those efforts to try to find the parents or in the alternative find the consulate to come and assist him and advise him whether or not he should speak. But if those efforts were fruitless, then they would have gone forward. But the last time they tried to make that notification, they weren't fruitless. Well, we don't know that. We know that the Mexican consulate seems to have shown up. But we don't know how quickly. We know eventually that they did. Why does quickly matter? I mean, they don't have to interrogate him quickly. They can interrogate him slowly. Well, but we also don't know that that was a criminal case. It was just an arrest for an illegal entry and a voluntary return. And this was a much different situation. So what? Well, there being a big difference, there's constitutional protections here that aren't applicable in his prior detention for just an illegal entry. So here. I guess you seem to be saying the problem was that they'd have to slow down. Right. So they'd have to slow down. Slow down. Yes. And here's what we have. There's a whole spectrum of when the government has to provide these different rights. There's hundreds of thousands, of course, of aliens that come across. And they have to rely on the representations of them of who they are. But they don't. You see, in this instance, I mean, this guy, I mean, the record is quite bizarre. Anyway, he was coming over every day. So they, in fact, didn't have to rely on what he said because they had a record. And the fact that they – I'm still very distressed about the fact that they created the impression, apparently, to the U.S. attorney and to the judge that they didn't have a record. But they did have a record. And they had it on the spot. And they knew that there was – or Salazar knew that this person – he knew something about this person. He wasn't operating in a complete vacuum. That's correct. But, again, all he had were prior statements. There was no adjudication of whether or not he was an actual juvenile. There were no – Then why isn't the answer – I mean, then there are two possible answers. One is the one that Judge Accoud has been suggesting, which is the statute basically applies at your peril. At the peril, which then leads to the suggestion that your opponent is suggesting, which is they should have operated as if he was a juvenile. Then the peril wouldn't matter. I mean, there are two possibilities. They can take their chances or they can operate on the assumption of the more protective instead of the less protective information they have. They have two sets of information. Some leads to more protection than others. Why not give them the more protection? I think it asks too much of the government. And here's why. The JDA provides these statutory protections in addition to the constitutional protections. The constitutional protections were applied. Now, what I think that this circuit has not quite done but should do is adopt the procedures that were provided in the Salgado Ocampo case, namely saying the government has the initial burden of showing a prima facie case. But that has to do with when you're ultimately demonstrating the truth of the question of whether he is or isn't a juvenile. I understand that. But at least here, the information that he had, it was prima facie evidence. He believed that this was an adult. He really did. This isn't a trial. I mean, what you do at trial is one thing, but what you do when you're trying to implement a statute that seems to be written absolutely, and with that regard to what somebody thinks about whether somebody is a juvenile or not, is you operate on a more protective basis. Why not? Well, one, there are the expenses and the time. And you have someone who's claiming to be an adult, and you're telling them no. Today, but you know yesterday he wasn't. You know that. You do. But you don't know that yesterday's claim was any different than today. That is true. So therefore, you have a choice. You can either act as if he was an adult, and then if you're wrong, the whole prosecution blows up, or you can act more intelligently on the theory that we're going to give him the more protections, because why not do that? Well, you have a danger of putting an adult with children also. Putting him where? In detention? Yes, in detention. What about this has anything to do with where you put him in detention? You have to put a juvenile in juvenile detention. You have to separate them from adults. That's one of the main requirements of treating them that way. And that's the most important. Well, I'm not talking about any other consequence. I'm talking about this consequence. Well, that's one of the things that would have been done. Well, those are arguments for changes in the statute to give the government some leeway, if they reasonably should have known, or some such standard. But Congress didn't choose to put that standard into this statute. And I'm not sure the basis for reading that in. I think what Congress did was to provide the protections for someone that became an alleged delinquent. And if they didn't know. That's in the next statute, but it's not in this one. And that may have some significance, too. You're right. And the issue has not been addressed if he lies. But also, it has not been addressed if he lies, that that can be the fault of the government. In other words, he's using this JDA both as a shield and a sword. Well, this would be a different case if you didn't have the information available on the computer. Then we'd have a harder case. Then we'd have the absolute case. You know, what if it turns out he was a juvenile, but they had no way of knowing? That's a hard case. But that's not this case. At least they knew there was a big question. Well, and I would disagree. I think it would be a bigger question if the ambiguity was he didn't say anything, and there was a past record of being a juvenile or delinquent. But he was stating not only once, but twice, I'm an adult. And then there was good corroboration behind that. And that's what made this case differently. Not to mention, he was 17. There wasn't any corroboration behind it. There was conflicting information behind it. No, Your Honor. There was corroborating information. Once before, he'd given that date, and several other times he hadn't. Correct. That's not very good corroboration of anything. But it was corroboration. He had given that date before. So there was reason to believe that what he was saying this time was something that he'd given before. For his very first arrest, the year before, he'd given the same exact date of birth. Do you want to address what, assuming that we thought there was a violation here, what would be the remedy? What would be the remedy? Well, I think it would be harmless error at this point. But what about the point that the confession was used, a confession that otherwise would have been suppressed, was used to support the financial gain component of the underlying crime? I don't think it would have been suppressed. I don't think it necessarily has to be suppressed. And the reason being, he would have been entitled to those protections had he not lied and he received all the protections of the JDA. And there is a case, the Doe case out of the Second Circuit, addresses this. And it says that... I want to give us a site since there are hundreds of Doe cases. I know, I know, and I do have... One of our Doe cases says that we have a two-step test for determining prejudice. First, we look at whether the violation was a cause of the confession. And if so, then we looked at the prejudice caused by the confession. And I... So he was interviewed in the absence of his guardian, parents, counsel, whatever. Right. And I think at the very least, there has to be some weight given to the fact that it was his fault. At least 50%, I would tend to say more, that he was not given the protections because of what he said and what he insisted. And that's why he didn't give the protections. But would we need to have an evidentiary hearing as to whether the violation was a cause of the confession, assuming that we found that there was a 5033 violation? I don't believe so, Your Honor, because there's no question about the facts of the case. There was the court specifically found, both Judge Houston and the magistrate judge, that he intentionally said, I'm an adult. And they both found that... Right, but that's not the issue.  Assuming there was a violation, then is there a way to tell without an evidentiary hearing that the violation didn't cause the confession? Well, two things. There wouldn't have been a violation but for his misconduct. But second, we also know that because of the subsequent efforts to get a hold of the consulate... But that isn't so, because... necessarily so. Because we know that Salazar, you're relying on the fact that there was at least one earlier date that conformed to it. So we don't know. I mean, Salazar wanted to believe what he wanted to believe, and he wanted to believe it was an adult. That was pretty clear. But if Mr. Rodrigo P. had been there three times in the last month, if he just said that same birthday, he would have been treated as a juvenile. So he knew how to do that. I'm not sure why his lying makes any difference, since, as Judge Berrizon was pointing out, I mean, Congress wanted to protect juveniles. If it had been a 13-year-old, and the 13-year-old had been lying, that would not make a difference to the protection that's accorded by the Act. I think that's true. And I think in a different case, if there was a reason to think that this guy might be clearly under 18. But this Rodrigo P., even at the later date that we found, was 17 years, 10 months. So are we going to have like a sliding scale? No. Congress just says juvenile gets this protection and nonjuvenile doesn't. And I don't see how we can vary that. No, I agree. But there has to be some reason to accept the representation that he's 18 and not consider anything else of any more credible weight than what he's receiving at that point. This Court in Frasco's Omosa even identified that sometimes the age of the defendant is peculiarly in the receipt of the – the age is peculiarly known only to the defendant. But that case went to the shifting burdens in trying to make the determination. It did, but it does identify that, especially where there's an alien involved, it's much more difficult to determine the age. We can't go to the DMV. We can't go to the registrar. There was an answer. He could have called the Mexican consulate. But he couldn't have, Your Honor. He could have called the parents. He couldn't have, Your Honor. Why not? Because he would have called the consulate. The consulate would have said, yes, he was removed last month, but that did not prove his actual age. But then they could have gone and found out. I mean, there's no emergency that they had to interview him at that second. But it still would not have proven he was a juvenile. It just would have confirmed what he already knew, that he was removed after claiming to be a juvenile. But they could have done what they eventually did, which is go to the consulate and say, please go check, is this person a juvenile? And as we know, that would take over a month to even come up with somewhat. So, meanwhile, in a month they treat him as a juvenile. It turns out it's wrong that they treat him as an adult. No. Actually, the very first day he finally claimed to be a juvenile, he was put into juvenile detention and given all the protections of a juvenile. But I'm saying you're treating it as if this is an imbroglio that can't be dealt with because somehow they had to treat him as an adult. They didn't have to treat him as an adult. They could have just treated him as a juvenile. In other words, their default position was we're going to treat him as an adult until we find that he's a juvenile. Why can't the default position, we're going to treat him as a juvenile until we find he's an adult? Well, and I certainly understand that. And, of course, our position is just that that burden shouldn't be put on the government under these circumstances. Unless the statute puts that burden on them. By saying that if it turns out you're wrong, then the conviction's no good because the issue is ultimately, absolutely, is he a juvenile. But I also think that there has to be some weight given to the evidence presented and the conduct by the juvenile at that point. The fact that he affirmatively made false representations. Again, I go back to the fact that if there were nothing sitting there on the computer, you'd have a much better case. It would still be a hard case because of the statute. But this was all sitting there on the computer, at least that it was not clear. And, again, even with that information, none of that was any better evidence than what they had. Counsel, your point is that it was not possible on the evening in question for Officer Salazar to confirm absolutely and beyond reasonable doubt the true age of Mr. Rodrigo P., who apparently had numerous ages depending on how he perceived his age would aid him. Right. But why, Judge Berzon keeps asking, why not postpone it for six months, treat him as a juvenile until it's proved conclusively to the contrary? What burden or prejudice does the government or the community or California suffer if he's treated as a, mistakenly. Say he is treated as if he was 17 1⁄2 when, in fact, he's 19. He just looks 17 1⁄2. Well, we have a couple of reasons. It's a criminal case. He was just driving the wrong lane of freeway and endangered 16 illegal aliens who have to be held in immigration detention. Either way, if you're going to treat him as a juvenile, yes, because that ultimately happened and they ultimately had the trial as a juvenile. And then you'd have to hold the juvenile in juvenile detention. Right. And if he's an adult, you're stuck in limbo. You can't hold an adult in juvenile detention. And, you know, there is a law enforcement interest in obtaining information from an individual shortly after arrest. But that's ultimately where you are, right? I believe so. And I think that is a legitimate interest for pursuing the case here. And, you know, they complied with the constitutional protections that were permitted. And what we're dealing with is whether the regulations were complied with. Thank you very much. Thank you. You have four minutes and 12 seconds. I think, Your Honor, in addressing Agent Salazar's behavior and what he knew at the time of Rodrigo P.'s address is best addressed in his own words. When he admitted at the juvenile determination hearing that he asked Rodrigo P. his age again because if he was an adult, we wouldn't have been able to prosecute him. Agent Salazar had an agenda, and he ignored it. If he was an adult, we wouldn't have been able to prosecute him. If he wasn't an adult, we wouldn't have been able to prosecute him. I don't know why Agent Salazar thought that, but I think that was the line of reasoning he was focusing on. And the government focuses on the alleged corroboration that this agent had. That one arrest that they relied on as corroborating was a year old. But I think, Your Honor, Judge Berzon has made that point quite clear. There is no reason that they shouldn't have and couldn't have processed Rodrigo P. as a juvenile on the night of his arrest. You don't think it is significant that Congress and the Supreme Court have taken the view that one of the protections of juveniles is to not be housed with adults? I do think that is significant, but I also don't think it's dispositive, especially in this case. Is that in the statute, by the way? It is. There's a separate statute in the 5033 series. Is it worded the same way? Is it worded juvenile or alleged delinquent? Alleged delinquent and juvenile. Actually, that statute morphs the two and talks about both of them. A juvenile is not to be housed with adults, and then alleged delinquents can't be. I believe the statute is 5037, but I could be wrong, and I don't have it in front of me. Interestingly enough, in this case, Rodrigo P. was not housed in Juvenile Hall after he made a claim of being a juvenile. What happened to him is he was detained and placed in administrative segregation at the Imperial County Jail, an adult facility. Which he could have been anyway. Right, which is where he would have been as an adult. Which is where he could have been if he was treated as a juvenile from day one. Right, which he was housed separately in the Imperial County Jail. And that's how they'd comply with the statute, which was by holding him in an adult facility but in segregation. Well, in fact, that actually doesn't comply necessarily. He's supposed to be held in a juvenile detention facility once he's determined to be a juvenile. There's two sections of the statute requiring that alleged delinquents are not housed with post-conviction delinquents, which causes a whole different problem altogether, actually. And that juveniles are never supposed to be housed with adults. And what's the remedy for a violation of that statute? I'm not sure what a remedy for a violation of that statute is. It's not suppressing the conviction and nothing to do with conviction. Right, that's solely about how they're housed. But I think the government relying on that as some reason why we can't process when there's ambiguity, we can't process them as juveniles, is somewhat ridiculous in this particular case when there was ambiguity. They just left the juvenile in isolation at the Imperial County Jail, which seems to be more prejudicial. So an isolation situation is possible. And I think really what it comes down to is a waiver. Taking the government's position as what it is, is because this child made a misstatement, which in fact it was a lie, fine, he waives all of those protections under 5033. This court's already held that juveniles can't independently waive parental notification or consular notification. So for them to be able to waive 5033 entirely by lying, it doesn't mess with the case law. Well, this is not some unsophisticated, immature, unfamiliar individual. He's a guy that comes across the border regularly, has encountered these people before, has gone through the whole procedure, has told them different ages at different times, depending on what he thinks is in his best interest, and in fact has been sent back across the border as a juvenile on occasion, I mean as an adult on occasion, and has been held as a juvenile on occasion. Right, which taught him, if nothing else, that claiming that you're a juvenile and asserting your juvenile status means that you're held until a Mexican consulate comes to get you. So there's an incentive for him to be an adult. He didn't know a separate set of consequences having to do with once they were charged with a crime. Right, and I think when the District Court Judge Lewis and the Assistant United States Attorney Weiss all made this big production about this is a kid that knew and he's been using the protections of the JDA and his age as a sword and a shield, is belied by the fact that once he was told he was charged criminally, he still didn't say that he was a juvenile. So clearly he wasn't all that savvy, because that would have been the time to bring it up, not when he thought he was just facing removal. And I also think that the fact that they had previously gotten a hold of the consulate, the consulate came on October 28th, and that officer testified that what they did before they voluntarily returned Rodrigo P as a juvenile was procure his birth certificate, verify his age, and then return him. So that would have verified it and cleared the matter up. So it is really so then that they couldn't have found out fairly quickly that he was in fact a juvenile. Yes, it would have cleared the matter entirely. It wouldn't have created any ambiguity. Do we know how long it took in October? What? Do we know how long it took in October? He was arrested on the 28th of October and turned over to the Mexican consulate. I don't know what day he was removed. We know that his next entry into the United States was November 4th. So pretty quick. It had to be. So the Snow Center was to take six months. No, and the consular official, in fact, testified that after receiving the call on the 7th, he checked his database and found the information that day. So it wouldn't have taken weeks. The defense counsel was never provided with the information to make the move any faster. Okay, thank you very much. Thank you. Thank you, counsel, for an interesting argument and interesting case. The case of the United States of America v. Juvenile Mail has been submitted, and we go to the last case of the day. Bye-bye.
judges: Berzon, Ikuta, Singleton